IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUSTIN BAUGHMAN, et al.,  :

    Plaintiffs,

v.  :  Case No. 3:19-cv-0008

KTH PARTS INDUSTRIES, INC.,      JUDGE WALTER H. RICE

    Defendant.  :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b) (DOC. #27); COUNSEL TO JOINTLY CONFER AND SUBMIT REVISED NOTICE WITHIN SEVEN DAYS OF THIS DECISION AND ENTRY; DEFENDANT TO PROVIDE PLAINTIFFS' COUNSEL INFORMATION AND A LIST AS SET FORTH HEREIN OF PUTATIVE CLASS MEMBERS WITHIN 14 DAYS FROM DATE OF FILING OF THIS DECISION AND ENTRY

---

Plaintiffs, Justin Baughman ("Baughman") and Austin Fields ("Fields"), on behalf of themselves and others similarly situated (collectively, "Plaintiffs"), filed a First Amended Collective and Class Action Complaint, Doc. #26, naming their former employer, KTH Parts Industries, Inc. ("KTH" or "the Company"), as Defendant. They allege federal and state violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, et seq.; the Ohio Minimum Fair Wage Standards Act ("the Ohio Wage Act"), Ohio Revised Code §§ 4111.03 and 4111.08; the Ohio Prompt Pay Act ("OPPA"), Ohio Revised Code § 4113.15; and Ohio's

Recordkeeping laws, Ohio Rev. Code §§ 4111.08, 4111.14(G) and (H) and Article II, Section 34a of the Ohio Constitution. ("Ohio's Recordkeeping laws"). Doc. #26.

This matter is before the Court pursuant to Plaintiffs' Pre-Discovery Motion for Conditional Class Certification and Court Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) ("Motion" or "Motion for Conditional Class Certification"), Doc. #27. KTH has filed a response opposing this Motion, Doc. #34, and Plaintiffs have filed a Reply, Doc. #38.

For the reasons set forth below, the Motion for Conditional Certification is SUSTAINED in part and OVERRULED in part.

### I. Background and Procedural History

KTH designs, develops and manufactures automotive parts in St. Paris, Ohio. Doc. #26, PageID#431. Its hourly workers clock in to a timeclock system using a personal identification code. In addition to hiring workers, which it refers to as "associates," KTH also uses staffing agencies to supply it with temporary workers as needed. Doc. #34, PageID#596.

Plaintiffs, Baughman and Fields, worked at KTH and primarily performed duties as hourly, non-exempt employees as defined in the FLSA and the Ohio Acts. Both have filed a Consent to Join Form. *Id.*, PageID#430-431. Plaintiffs refer to all hourly, non-exempt production workers at Defendant's worksite that use the timeclock to track their hours as "Timeclock Associates." Doc. # 27-4, PageID#515.

2

Plaintiffs' allegations in their First Amended Complaint are premised on Defendant's policy and/or practice of only paying its Timeclock Associates for the hours on their scheduled shift rather than the actual amount of time worked. They contend in their Motion that conditional certification under the FLSA is appropriate because Plaintiffs are not paid for (1) donning certain employer required personal protective equipment ("PPE") before they clock in for work;[1] and (2) work activities such as walking to their work stations, meeting their shift supervisors, setting up the work lines and/or attending group meetings after they clock in. They allege that Defendant's companywide policy of only paying them for the hours on the scheduled shift deprives them of overtime compensation, thus violating the FLSA requirement that employers pay their employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1).

Plaintiffs contend that Defendant's alleged policy and/or practice of only paying for scheduled shift time and not time actually worked is supported by its books and records. They attach Baughman's time cards to their Motion, Doc. ##27-1, 27-2 and 27-3, as well as a detailed declaration of Fields. Doc. #27-4. As stated in Fields's declaration and as Baughman's time cards allegedly show, KTH

---

[1] Since filing their Motion for Conditional Certification, Plaintiffs have represented that they "intend not to proceed with their donning and doffing claims at this time." Doc. #47 PageID#770. Accordingly, the Court will treat the donning and doffing claim as abandoned by Plaintiffs, insofar as this motion is concerned.

3

does not pay its "Timeclock Associates" overtime compensation "when they and similarly situated employees worked at least 40 hours in one or more workweeks during their employment." Doc. #27, PageID#456. Specifically, they argue that KTH has a policy of "unlawful rounding" i.e., not rounding to the "nearest quarter of an hour" as required by 29 C.F.R. § 785.48(b)[2] for a start time. The Motion and declaration also state that the Company "improperly rounds compensable time worked down when employees work more than 7 minutes after the scheduled end of their shifts." Doc. #27, PageID#460-461; Doc. #27-4.

Plaintiffs argue that KTH's actions of only paying employees for their scheduled shifts, as opposed to the hours actually worked, affects a "few hundred employees." These affected workers include all of Defendant's hourly, non-exempt production workers in the Production Department which includes sub-departments such as Stamping, Welding, Material Service, Quality Assurance/Control and Technical/Maintenance as well as Office Staff and other Timeclock Associates. Doc. #27-4, PageID##511-518.

The proposed FLSA Collective Class is defined as:

---

[2] 29 § 785.48 (b) reads as follows: "'Rounding' practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."

4

> All current and former hourly, non-exempt production employees of Defendant who performed at least 40 hours of work in any workweek beginning January 8, 2016[,] and continuing through the date of judgment.

Doc. #27, PageID#448.

## II. Analysis

### A. Conditional Certification

The FLSA requires covered employers to pay non-exempt employees not less than the applicable minimum wage for each hour worked, and one and one-half times the employee's regular rate of pay for each hour worked in excess of forty hours per week. 29 U.S.C. §§ 206-207. Employers who violate these provisions are liable for the unpaid wages, plus an additional amount as liquidated damages, reasonable attorneys' fees and costs. 29 U.S.C. § 216(b). Under the FLSA, a collective action may be filed by one or more employees on behalf of themselves and other "similarly situated" employees. *Id.* However, unlike a typical class action lawsuit, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

The certification process in an FLSA collective action typically proceeds in two phases with the first phase known as "conditional certification." This initial phase is intended "only to aid in identifying similarly situated employees" and is not a final determination that the case may proceed as a collective action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-547 (6th Cir. 2006). "After the opt-in

5

forms have been filed and discovery is complete, a defendant may file a motion for decertification. At that point, the court examines with much stricter scrutiny the question of whether these other employees are, in fact, similarly situated." *Id.* Because the statute of limitations for an FLSA claim continues to run until written consent is filed with the court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.) (mortgage loan officers entitled to conditional nationwide class certification before defense on the merits is ripe since time is of the essence due to statute of limitations not tolling for plaintiffs who have failed to opt-in).

Before authorizing the plaintiffs to send the notice, however, the Court must first determine whether they have shown "that the employees to be notified are, in fact[,] 'similarly situated.'" *Comer*, 454 F.3d at 546. A "modest showing" at this initial stage of the litigation is all that is required. *Lewis*, 789 F. Supp.2d at 867. While "similarly situated" is not defined in the FLSA, employees are generally considered to be similarly situated if their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Id.* at 868. "Plaintiffs can show they are similarly situated by showing that 'their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011) (Dlott, J.) (quoting *O'Brien v. Ed*

6

*Donnelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 577 U.S.153, 136 S.Ct. 663 (2016)). The "'similarly situated' requirement is less stringent than that for joinder under Rule 20(a) or for separate trials under Rule 42(b)[,] . . . [and] is considerably less stringent than the requirement of Rule 23(b)(3) that common questions 'predominate[.]'" *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). Application of this "fairly lenient standard . . . typically results in conditional certification." *Comer*, 454 F.3d at 547. At no point in resolving the conditional certification issue, however, does the Court opine on, or even consider, the merits of plaintiffs' claims. *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *7 (S.D. Ohio Dec. 9, 2011) (Rice, J.) (citing *Creely v. HCR Manorcare, Inc.*, 789 F.Supp.2d 819 (N.D. Ohio 2011)). If a court grants a motion for conditional certification, the putative class members receive notice and an opportunity to opt-in to the litigation. Factors considered in a motion for conditional class certification include: "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis*, 789 F. Supp. 2d at 868 (quotations and citations omitted).

Based on the allegations of the First Amended Complaint, Plaintiffs' Motion, the attached time cards of Baughman and Fields's declaration, Plaintiffs argue that the putative class members "are similarly situated for purposes of Section 216(b)

7

conditional certification." This is so, they contend, because they worked for the same enterprise as defined in the FLSA, performed work "integral and indispensable" to KTH, and were subject to the same "policy and practices" of KTH that deprived Baughman and Fields and other Timeclock Associates of overtime compensation. Fields's declaration details the timekeeping system employed at KTH, the physical worksite and his ability to observe other Timeclock Associates utilizing the Company's timeclock system. Based on his work experience, training and discussions with other Timeclock Associates, he opines that it is KTH's policy and practice to pay its hourly workers for their scheduled shifts and not the actual time that they work. He estimates that there are "hundreds of similarly situated non-exempt hourly Timeclock Associates at KTH" who were "also subject to the timekeeping system/Rounding Policy" he described in his declaration.

In response to Plaintiffs' Motion for Conditional Certification, KTH argues that Baughman and Fields, the named Plaintiffs, are not similarly-situated to the opt-in plaintiffs and "that maintenance of the opt-in and putative class is impracticable." It asserts that one opt-in plaintiff has claims that may be time-barred, one was employed at KTH Leesburg Products, LLC ("KLP")[3] in Alabama and that other opt-in party plaintiffs were assigned to work at KTH and KLP through "staffing agencies" with different timekeeping and payroll processes for

---

[3] KLP, a former defendant, was dismissed for lack of in personam jurisdiction. Doc. #24.

the temporary workers. It also argues that one opt-in plaintiff never worked for the Company.

Although Defendant's arguments that certain of the opt-in plaintiffs, including those who are temporary workers associated with the staffing company, are not similarly situated to Plaintiffs may be correct, this is a determination that is made at the decertification phase. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F.App'x 669, 672 (6th Cir. 2012) ("[t]he lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated" at the second decertification stage). At this initial phase, courts in this district have held that "[n]o minimum number of similarly-situated employees is required for conditional certification." *Lacy*, 2011 WL 6149842, at *2; *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-CV-00983, 2012 WL 6042839 (S.D. Ohio Dec. 4, 2012) (Sargus, J.) (conditional certification granted for nurses throughout Ohio upon two declarations). Plaintiffs argue that the Company essentially ignores the Consent to Join forms of Ruth Halfacre and Richard Craig, Doc. #20-1 and Doc. #33-1, respectively, two former KTH employees, and fails to explain why they are not "similarly situated" to Plaintiffs.[4] As such the Company fails to overcome the "fairly lenient standard" of "similarly situated" that the Court uses at this initial stage.

---

[4] Although there were apparently two individuals named Richard Craig who worked for KTH, the claim of the opting-in Richard Craig, Doc. # 33-1, is apparently not time-barred. Doc.#38, PageID#641.

9

For the reasons set forth above, the Court finds that Plaintiffs have sufficiently demonstrated that they are similarly situated to the putative class. Accordingly, the Collective conditionally certified under FLSA, 29 U.S.C. § 216(b), is as follows:

> All current and former hourly, non-exempt production employees of Defendant who performed at least 40 hours of work in any workweek beginning January 8, 2016[,] and continuing through the date of judgment.

### B. Request for Information, Notice (Doc. 27-5) Opt-In Consent Form (Doc. #27-6)

#### 1. Request for Information

Plaintiffs request that within 14 days of this Court's Order, Defendant identify all potential opt-in plaintiffs by providing a list, in electronic and importable format, of the names, positions of employment, dates of employment and last-known mailing and email addresses of all potential opt-in plaintiffs who worked for Defendant at any time from three years preceding the filing of the Complaint[5] through the present. Although Plaintiffs' Motion originally requested that Defendant also provide the last known telephone numbers of potential opt-in

---

[5] Although Plaintiff's Motion for Conditional Certification states that the information should be provided for "all potential opt-in plaintiffs who worked for Defendant at any time from three years preceding the filing of this *Motion* through the present," Doc. #27, PageID#448, Plaintiffs also request this information "of all potential opt-in plaintiffs who worked for Defendant at any time from three years preceding the filing of the *Complaint* through the present." *Id.*, PageID#478. The Court will assume that Plaintiffs intended the three-year period to run from January 8, 2019, the date the Complaint, Doc. #1, was filed.

10

plaintiffs, Doc. #27, PageID##456, 477 and 478, following KTH's objection to this request, Doc. #34, PageID#592, Plaintiffs "have elected to forego their request for the production of phone numbers here." Doc. #38, PageID#647. Accordingly, this request for information, without the last known telephone number of potential opt-in plaintiffs, is sustained.

### 2. Notice: 90-Day Opt-In Period, Costs and Section I

Plaintiffs propose that a 90-day opt-in period be permitted and included in their Notice, Doc. #27-5, and Opt-In Consent Form, Doc. #27-6. They argue that this time period has been "regularly provided by this Court in the past" and is necessary in this case due to a the "high possibility" of outdated email and mailing addresses and delays in postal service due to the COVID-19 pandemic. Defendant objects to an opt-in period of 90 days, arguing it is excessive and that 45 days is sufficient for the putative plaintiffs to consider their options and decide whether to join in this litigation. The Court agrees with Plaintiffs and finds that the 90-day notice period is both "a standard" and an "appropriate notice period" in this district, *Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2016 WL 11501744, at *2 (S.D. Ohio Sept. 6, 2016) (Marbley, J.) ("The Court agrees with Plaintiffs that 90 days is a standard notice period and fair in this case."); *Fenley v. Wood Group Mustang, Inc.*, 170 F. Supp. 3d 1063, 1075-76 (S.D. Ohio Mar. 17, 2016) (Smith, J.) ("Courts in this District have found 90 days to be an appropriate notice period on many occasions.") (citations omitted), and is also required given the declaration

of a national emergency due to the COVID-19 pandemic and the resulting interruption of businesses and employment.

KTH also argues that the following language should be added to Section III of the proposed Notice: "You have no obligation to pay attorneys' fees to Class Counsel unless the lawsuit prevails, though you may be responsible for paying costs incurred during the lawsuit regardless of the outcome of the case." The Court disagrees for two reasons. First, such language may "improperly dissuade putative collective members from opting into the lawsuit." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, at *10 (S.D. Ohio Aug. 14, 2017) (Rice, J.); *Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-cv-3812, 2020 WL 1929383, at *8–9 (S.D. Ohio Apr. 21, 2020) (Sargus, J.)("Language informing potential putative class members of fees and costs could unfairly dissuade participation."). Second, because Plaintiffs' proposed Notice is silent on the subject of costs and attorney fees, Defendant's language would create confusion, since it does not explain to a potential plaintiff how fees for Plaintiffs' counsel are calculated if "the lawsuit prevails"[6] or what is included as a "cost." Therefore, not only would including Defendant's proposed language concerning payment of costs potentially dissuade putative collective members from opting-in, it would

---

[6] Defendant's use of the phrase "Class Counsel" is likewise confusing, since neither the Notice nor the Opt-in Consent Form reference "Class Counsel."

12

also create unnecessary confusion as to the difference between the payment of costs, attorney fees and how any such payment is calculated.

Finally, although Defendant made no objection, the Court finds that a portion of Section I of the Notice stating Plaintiffs' allegations, Doc. #27-5, is inconsistent with Plaintiffs' representation to the Court that they "intend not to proceed with their donning and doffing claims at this time" Doc. #47 PageID#770. The relevant portion of this section reads as follows:

> Plaintiffs alleged [in their First Amended Complaint] that prior to the scheduled start of their shifts, production employees. . . clock in, walk to workstations, meet with shift supervisors, set up lines, and attend a group meeting. However, Plaintiffs allege that they are only paid for their scheduled shifts rather than from the time they arrive at the worksite until they clock out.

*Id.*, PageID#520.

As drafted, this language asserts that Plaintiffs should be paid from "the time they arrive at the worksite" as opposed to when they clock in. Accordingly, Counsel for Plaintiffs and Defendant are ordered to agree upon revised language for this portion of Section I and to submit this new language to the Court for approval within seven days of the filing of this Decision and Entry.

### 3. Consent Form

KTH has stated no objection to the Consent Form, Doc. # 27-6, and no objection to sending the Notice via U.S. Mail and email.

## III. Conclusion

For the foregoing reasons, the Court SUSTAINS in part and OVERRULES in part Plaintiffs' Pre-Discovery Motion for Conditional Class Certification and Court Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b), Doc. #27. The Court ORDERS the following:

1. The following Collective is conditionally certified: All current and former hourly, non-exempt production employees of Defendant who performed at least 40 hours of work in any workweek beginning January 8, 2016, and continuing through the date of judgment;

2. Defendant shall provide to Plaintiffs' counsel, within 14 days of this Court's Decision and Entry, a list, in electronic and importable format, of the names, positions of employment, dates of employment and last-known mailing and email addresses of all potential opt-in plaintiffs who worked for Defendant at any time from three years preceding the filing of the Complaint through the present; and

3. Counsel for Plaintiffs and Counsel for Defendant will submit to the Court for its approval, within seven days of this Decision and Entry, a revised Section I of the Notice, Doc #27-5, consistent with Plaintiffs' earlier representation to the Court that they "intend not to proceed with their donning and doffing claims at this time" Doc. #47 PageID#770. Following Court approval, said Notice will be sent via U.S. Mail and e-mail to the Collective as defined in this Decision and Entry.

August 16, 2021

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE