**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **AUSTIN FIELDS**, on behalf of himself and others similarly situated, | ) ) ) | Case No. 3:19-cv-0008 |
| Plaintiff, | ) ) | Judge Walter H. Rice |
| v. | ) ) ) | |
| | ) | **JOINT MOTION FOR PRELIMINARY** |
| **KTH PARTS INDUSTRIES, INC.**, | ) | **APPROVAL OF CLASS ACTION** |
| | ) | **SETTLEMENT** |
| Defendant. | ) | |

## I.    INTRODUCTION

Plaintiff Austin Fields ("Representative Plaintiff"), on behalf of himself and the members of proposed settlement class, and KTH Parts Industries, Inc. ("Defendant") respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Agreement" or "Settlement") between Representative Plaintiff and Defendant pursuant to Federal Rule of Civil Procedure 23(e).

In support of this Joint Motion, Representative Plaintiff and Defendant submit the following exhibits:

**Exhibit 1:**    Class Action Settlement Agreement and Release and exhibits.

**Exhibit 2:**    Declarations of Matthew Coffman and Daniel I. Bryant.

**Exhibit 3**:    Proposed Preliminary Order Approving Class Action Settlement Agreement.

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement, attached as **Exhibit 3**, and:

- Certify the following class under Rule 23: "All persons who since January 8, 2017: (1) were employed by KTH in an hourly, non-exempt role and worked at KTH's facility in St. Paris, Ohio; (2) worked 40 hours in any workweek since January 8, 2017; and (3) were included in the data provided by Defendant (the "Class Members").";

- Preliminarily approve the Settlement pursuant to Rule 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the service payment to Representative Plaintiff;

- Designate Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

## II. FACTS

### A. Initial Procedural Background

On January 8, 2019, Justin Baughman ("Baughman"), Shawn Nichols ("Nichols"), and Candi Williams ("Williams") (collectively hereinafter "Former Plaintiffs") filed this case, *Baughman, et al. v. KTH Parts Industries, Inc.* ("KTH") *& KTH Parts Leesburg Products, LLC* ("KLP") (KTH and KLP collectively hereinafter "Defendants") (Former Plaintiffs and Defendants collectively hereinafter the "Former Parties"), Case No. 3:19-cv-0008, in the United States District Court for the Southern District of Ohio, Eastern Division (the "Action"). In the Action, Former Plaintiffs brought claims against Defendants on behalf of themselves and others similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19; the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, 4111.03, 4111.10; and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15.

On March 8, 2019, KTH filed an Answer (ECF No. 6), and KLP moved to dismiss for lack of jurisdiction and also moved to dismiss claims of Shawn Nicholas due to an arbitration agreement (ECF No. 7). In addition, on March 11, 2019, KTH moved to dismiss for failure to state a claim (ECF No. 8). The docket reflects that the Former Parties fully briefed both motions (ECF Nos. 7–8) between the beginning of March 2019 through April 19, 2019. On November 25, 2019, Former Plaintiffs moved for conditional certification under 29 U.S.C. § 216(b) (ECF No. 22). On December 13, 2019, Defendants moved to stay briefing pending the motion for conditional certification, which the Court granted on January 2, 2020 (ECF No. 23). On April 13, 2020, the Court granted Defendants' Motion to Dismiss for Lack of Jurisdiction of Defendant KLP and to Dismiss Claims of Plaintiff Shawn Nichols (ECF No. 24). As a result, Nichols and Williams were dismissed due to lack of jurisdiction.

## B.     **Procedural Background Solely Against KTH**

On May 18, 2020, Baughman and Austin Fields ("Fields" or "Named Plaintiff") filed a First Amended Complaint (ECF No. 26). In particular, Named Plaintiff and Baughman alleged that they and other similarly situated hourly, non-exempt employees who worked at KTH's St. Paris, Ohio facility were not paid for all hours worked beyond their scheduled shifts as a result of donning personal protective equipment ("PPE") and performing other preparatory job duties after they clock in each day, including but not limited to proceeding to their work stations, meeting with shift supervisors and group meetings to cover safety issues and other miscellaneous instructions, and setting up their production lines so that they could be up and running at the start of their scheduled shifts (ECF No. 26, at PAGEID # 432–33). Named Plaintiff and Baughman also alleged that they performed job duties beyond their shift but were not paid for that time either (*Id.* at PAGEID # 434).

On May 18, 2020, Named Plaintiff and Baughman filed an Amended Motion for Conditional Certification under § 216(b) and requested that the Court conditional certify an FLSA collective action ("Amended Motion for Conditional Certification") consisting of all current and former hourly, non-exempt production employees of Defendant who performed at least 40 hours of work in any workweek beginning January 8, 2016 through the present (ECF No. 27). On May 27, 2020, Defendant filed its Response in Opposition (ECF No. 34). Named Plaintiff and Baughman filed their Reply in Support of their Amended Motion for Conditional Certification on June 17, 2020 (ECF No. 38).

At the same time, on June 1, 2020, Defendant moved to dismiss part of the First Amended Complaint, arguing that Named Plaintiff and Baughman failed to state a claim as to their donning and doffing of PPE ("Motion to Dismiss Donning and Doffing Claims") (ECF No. 31). It also filed an Answer the same day, subject to its pending motion to dismiss (ECF No. 32). Named Plaintiff, Baughman, and Defendant fully briefed the Motion to Dismiss Donning and Doffing Claims, including a Response in Opposition, a Reply, and a Sur-Reply (ECF Nos. 39, 41, 42).

On March 31, 2021, the Court sustained Defendant's Motion to Dismiss Donning and Doffing Claims and also, by Notation Order, overruled the Amended Motion for Conditional Certification on the same day (ECF No. 45). On April 12, 2021, Named Plaintiff and Baughman moved for reconsideration ("Motion for Reconsideration") regarding their Amended Motion for Conditional Certification (ECF No. 47). Defendant filed a Response in Opposition (ECF No. 48), and Named Plaintiff and Baughman subsequently filed their Reply (ECF No. 49). On June 10, 2021, the Court sustained the Motion for Reconsideration and indicated that a decision on the Amended Motion for Conditional Certification would be decided in a separate Decision and Entry. (ECF No. 50, at PAGEID # 796 n.4). On August 16, 2021, the Court sustained in part the Amended

Motion for Conditional Certification (ECF No. 51). Consequently, this Court conditionally certified a collective action under the FLSA of the following individuals:

> "All current and former hourly, non-exempt production employees of Defendant who performed at least 40 hours of work in any workweek beginning January 8, 2016[,] and continuing through the date of judgment."

(ECF No. 51, at PAGEID # 806).

Named Plaintiff, Baughman, and Defendant thereafter filed a Joint Motion to Approve and Issue Notice to the FLSA Putative Class Members (ECF No. 52), which was granted on September 1, 2021 by Notation Order and by a subsequent Order on September 2, 2021 (ECF No. 53). Between September 17, 2021 and December 17, 2021, sixty (60) individuals opted in to the Action by filing their consent to join forms (hereinafter "Opt-In Plaintiffs").

Beginning on or about December 10, 2021, to avoid the burden, expense, risks and uncertainty of litigation, Named Plaintiff, Baughman, and Defendant engaged in communication regarding an assessment of liability on a Rule 23 basis with respect to any person who was employed by Defendant in an hourly, non-exempt role at its St. Paris, Ohio facility and who worked 40 hours in any workweek during the period beginning January 8, 2017 to December 26, 2021 ("Relevant Time Period"). Toward the middle of January 2022, Defendant provided Class Counsel with the relevant pay and time data of the approximate 1,100 individuals in the putative Rule 23 Class for the Relevant Time Period. Class Counsel subsequently engaged the services of an economist to construct a damages model using relevant pay and time records produced by Defendant and Defendant constructed its own damages model. Over the course of the next two (2) months, Named Plaintiff and Defendant (the "Parties") continued to exchange their respective legal and factual positions. At the same time, having not heard from Justin Baughman ("Baughman"), one of the original named plaintiffs, and Baughman having failed to participate

and/or cooperate in the prosecution of the Action, Representative Plaintiff Field moved to dismiss him pursuant to Rule 21 (ECF No. 67). The Court entered an Order Dismissing Baughman from the Action on March 21, 2022 (ECF No. 68). The Parties, through their diligent and good faith negotiations, were able to resolve the Action on or about March 29, 2022 through the fully executed Class Action Settlement Agreement and Release that is currently presented to this Court for preliminary approval in the attached **Exhibit 1**. The total class size (regardless of whether the individual opted in or not) is approximately 1,161 individuals (**Exhibit 1**, ¶ a; **Exhibit 2**, Declaration of Matthew Coffman (hereinafter "Coffman Decl."), ¶ 22; Declaration of Daniel I. Bryant (hereinafter "Bryant Decl."), ¶¶ 13–21).

### C. <u>Summary of the Key Settlement Terms</u>

The total settlement amount is $1,100,000.00. The total settlement amount includes (a) all individual payments to the Class Members who do not opt out of the Settlement; (b) a service award to Representative Plaintiff; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the cost of settlement administration (**Exhibit 1**, ¶ 2(a); Coffman Decl., ¶ 23; Bryant Decl., ¶ 22).

Upon preliminary approval, the Notice of Class Action Settlement, attached as **Exhibit B** to **Exhibit 1**, will be distributed to the Class Members, providing them with an opportunity to opt out or object to the Settlement. Class Members will have sixty (60) days to opt out or object to the Settlement (**Exhibit 1**, ¶ 6(a); Coffman Decl., ¶ 24; Bryant Decl., ¶ 23). Class Members who do not exclude themselves will receive individual settlement payments on a *pro rata* basis based on the number of workweeks that they worked forty (40) or more hours during the applicable lookback period of January 8, 2017 to December 26, 2021 in comparison to the total number of workweeks in which all Class Members worked forty (40) or more hours during the applicable

lookback period. After all deductions, the total settlement reflects Class Counsel's work, resulting in a significant benefit to Class Members whereby each class member will receive, on average, $600 for alleged unpaid overtime compensation during the applicable lookback period even though Defendant maintains that the Class Members are not entitled to any damages. To receive this money, class members do not need to take any action other than to cash a check that will be mailed to them. Representative Plaintiff will be paid a service award in the amount of $7,500.00 ("Service Award"). Under the terms of the Settlement, Class Counsel will be paid one-third (1/3) of the total settlement fund for their attorneys' fees and reimbursed for their litigation expenses. Lastly, the cost of settlement administration, estimated to be $15,621.00, will be paid out of the total settlement amount. Given the substantial monetary relief recovered on behalf of the Class Members, the requests to pay the Service Award, Class Counsel's fees and litigation expenses, and cost of settlement administration are all reasonable as more fully explained below (**Exhibit 1**, ¶¶ 4, 15; Coffman Decl., ¶¶ 25–29; Bryant Decl., ¶¶ 24–26).

### III.    <u>PRELIMINARY APPROVAL IS APPROPRIATE IN THIS CASE</u>.

The Settlement is subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23. Courts in the Sixth Circuit use a three-step process for approving class action settlements. *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (Newman, J.). The first step requires the court to preliminarily approve the class action settlement. *Id.* The second step requires that notice of the class action settlement be issued to the proposed settlement class members. The third step requires the court to holding a fairness hearing and decide whether to grant final approval of the class action settlement. *Id.* Currently, the Parties request that the Court preliminarily approve the Settlement under the first step.

At this first step, the Court must ensure that the proposed settlement class outlined in the Settlement satisfies the certification requirements of Rule 23(a) and (b)(3).[1] Then, the Court must ensure that the Settlement meets the requirements of Rule 23(e). Lastly, the Court must ensure that settlement distributions are fair, reasonable, and adequate. As discussed below, these requirements are met here.

### A.  The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23(a).

In the Settlement, the Parties have agreed to the certification of the proposed settlement class:

> All persons who since January 8, 2017: (1) were employed by KTH in an hourly, non-exempt role and worked at KTH's facility in St. Paris, Ohio; (2) worked 40 hours in any workweek since January 8, 2017; and (3) were included in the data provided by Defendant.

In total, the proposed settlement class (including Representative Plaintiff and all Opt-In Plaintiffs) includes 1,161 individuals (**Exhibit 1**, ¶ a; Coffman Decl., ¶ 22; Bryant Decl., ¶ 19).

Under Rule 23, a class action may be maintained if the following requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).  All four elements are satisfied here.

### 1.  *The Numerosity Requirement of Rule 23(a)(1) Is Met.*

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (internal quotations omitted). This requirement is met upon a showing that joinder would be difficult and inconvenient. *Id.*  Numerosity is easily satisfied here because the proposed settlement

---

[1] When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any of the three conditions set forth in Rule 23(b). The Parties are requesting that the Court certify the proposed settlement class under Rule 23(b)(3).

class includes 1,161 individuals.  *See, e.g.*, *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (generally accepting that a class of 40 or more is sufficient to meet the numerosity requirement).

2.      *The Commonality Requirement of Rule 23(a)(2) Is Met.*

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation."  *Swigart*, 288 F.R.D. at 183 (citing *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).  "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class."  *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (internal quotation marks and further citation omitted).

In this case, the legal issue that links the Class Members—whether they were unlawfully denied overtime compensation as a result of Defendant's alleged policy or practice of only compensating them for their scheduled shifts rather than for all time they were clocked in—is undoubtedly "substantially related to the resolution of the litigation." Accordingly, the commonality requirement is met.

3.      *The Typicality Requirement of Rule 23(a)(3) Is Met.*

The typicality requirement under Rule 23(a)(3) is satisfied when claims of the proposed class representative are typical of the claims of the class. *Swigart*, 288 F.R.D. at 185 (internal quotation marks omitted). Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory.'" *Swigart*, 288 F.R.D. at 185 (quoting *Little*

*Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because Representative Plaintiff's and the Class Members' claims arise out of Defendant's same course of conduct: its failure to pay Representative Plaintiff and the Class Members overtime compensation in a timely manner based on an alleged policy or practice of only compensating them for their scheduled shifts rather than for all time they were clocked in. As such, whether it be through the unpaid overtime claims under the OMFWSA or the OPPA because the alleged wages remain unpaid and, as a result, untimely, typicality for purposes of Rule 23(a)(3) is satisfied here.

4. *The Adequacy of Representation Requirement of Rule 23(a)(4) Is Met.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185-86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Swigart*, 288 F.R.D. at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Both prongs of Rule 23(a)(4)'s adequacy requirement are satisfied. First, as explained above, Representative Plaintiff's claims against Defendant are based on the same alleged unlawful

policies and practices that affect the Class Members. Representative Plaintiff is seeking the same relief as would the Class Members, i.e., unpaid overtime compensation and untimely payment of wages. Thus, Representative Plaintiff's interests are aligned with those of the Class Members. Moreover, Representative Plaintiff is willing and able to fulfill his duties as the class representative. He has been actively involved in the prosecution of this case and was instrumental in the Parties reaching the Settlement by continuing to engage with Class Counsel (**Exhibit 2**, Coffman Decl., ¶ 36; Bryant Decl., ¶ 35).

Second, Class Counsel is qualified and able to conduct this litigation on behalf of the proposed settlement class. Collectively, Class Counsel has litigated over 100 wage and hour cases in federal courts around the country (**Exhibit 2**, Coffman Decl., ¶ 8; Bryant Decl., ¶ 8). Moreover, this Court recently entered an Order of Preliminary Approval of a Class Action Settlement involving 1,293 Rule 23 putative class members.[2] Class Counsel has actively and vigorously pursued the claims in this case. Class Counsel has committed, and will continue to commit, the resources necessary to bring this case to its conclusion.

**B.      The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).**

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) contains two requirements: predominance and superiority.

1.      *The Predominance Requirement of 23(b)(3) Is Met.*

---

[2] *See* Rawlings v. BMW Fin. Servs. NA, LLC, No. 2:20-cv-02289, Joint Mot. for Prelim. Approval of Class Action Settlement (hereinafter "*Rawlings* Mot."), Dkt. No. 73, at PAGEID # 524 (S.D. Ohio Mar. 11, 2022) (Morrison, J.); *Rawlings*, No. 2:20-cv-02289, Order Granting *Rawlings* Mot., Dkt. No. 74 (S.D. Ohio Mar. 15, 2022) (Morrison, J.) (granting preliminary approval on March 15, 2022).

The predominance requirement examines "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Put differently, the predominance requirements is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed settlement class satisfies the Rule 23(b)(3) predominance requirement because all of the Class Members share a common set of core, predominant alleged facts and legal issues, including (a) whether Representative Plaintiff and the Class Members performed compensable work beyond their scheduled shifts; (b) whether Representative Plaintiff and the Class Members worked overtime and how much overtime they worked; (c) whether Defendant was aware that the Class Members worked overtime; (d) whether Representative Plaintiff and the Class Members were denied overtime compensation as alleged in the Action; and (e) whether the unpaid wages were untimely paid.

2.      *The Superiority Requirement of Rule 23(b)(3) Is Met.*

The superiority requirement examines whether a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four (4) factors for courts to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).  Each factor weighs in favor of certification.

First, there is no evidence that the proposed settlement class members have any interest in maintaining this litigation in separate actions. Second, the Parties are not aware of other pending

litigation against Defendant involving the proposed settlement class members. Third, the benefits of concentrating the claims in this Court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction, and many, if not all, of Defendant's witnesses are located in this district. Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes. *See Amchem Prods*., 521 U.S. at 620.

Moreover, efficiency favors concentrating the claims in this Court. A final resolution of Defendant's liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action. Class certification here promotes consistent results, giving Defendant "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

### C. The Notice of Class Action Settlement Meets the Requirements of Rule 23(e) and Due Process.

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 F. App'x 364, 367 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is also required by due process. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,*

429 F.3d 935, 943–44 (10th Cir. 2005) (citing *Mullane*, 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974))). To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel*, 534 F.3d at 514 (quoting *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Id*. (emphasis in original) (citing *DeJulius*, 429 F.3d at 944). The issue is not whether all class members received notice "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172–77).

In this case, the Notice of Class Action Settlement will be sent to the Class Members by first-class mail using the addresses shown in company records unless another address was provided by any Opt-In Plaintiff or is otherwise discovered during the National Change of Address search.

**D.      The Settlement is Fair, Reasonable, and Adequate under Rule 23(e).**

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under the seven-factor standard discussed below. *UAW*, 497 F.3d at 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); and *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy

litigation, and they lend themselves readily to compromise. 4 Newberg on Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145–46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *accord Sweet v. Gen. Tire & Rubber Co.*, No. C75-181A, 1982 WL 278, at *5 (N.D. Ohio Mar. 17, 1982).

The seven (7) factors used by the Sixth Circuit to evaluate class action settlements are as follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 626 (6th Cir. 2007) (citing *Granada Invs., Inc.*, 962 F.2d at 1205; and *Williams*, 720 F.2d at 922–23). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. As discussed below, each of these factors supports preliminary approval here.

### 1. *No Indicia of Fraud or Collusion Exists.*

There was no fraud or collusion in reaching the Settlement. "[C]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 WL 4913678, at *2 (N.D. Ohio Oct. 10, 2018) (further citation omitted). All settlement negotiations were extensive, conducted fairly, and at arm's length, and they only occurred after the exchange and rigorous analysis of the relevant case law, pay and time data, and exhaustion of the Parties' legal and factual position (Coffman Decl., ¶ 30; Bryant Decl.,

¶ 29). *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (finding that arm's length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements). Both Parties' Counsel, who are experienced in wage and hour class and collective actions, support the settlement as fair and reasonable, and all certify that it was reached as the product of arm's length negotiations (Coffman Decl., ¶ 41; Bryant Decl., ¶¶ 29-30).

2.   *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Wage and hour class and collective actions are inherently complex, expensive, and time-consuming. *See, e.g.*, *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *4 (S.D. Ohio May 17, 2021) (Rice, J.); *Satterly v. Airstream, Inc*., No. 3:19-cv-32, 2020 WL 6536342, at *5 (S.D. Ohio Sept. 25, 2020) (Rice, J.) ("From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (further citation omitted) (stating that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them").

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted litigation. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and it amplifies the benefits of that relief through the economies of class resolution (Coffman Decl., ¶ 46; Bryant Decl., ¶¶ 40-45).

3.      _Investigation Was Sufficient to Allow the Parties to Act Intelligently._

To confirm that Representative Plaintiff and the Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. _In re Broadwing, Inc. ERISA Litig._, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.) (further citation omitted); _Satterly_, 2020 WL 6536342, at *5 (same). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." _Satterly_, 2020 WL 65363422, at *5 (further citation omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." _Id._ (further citation omitted); _Mitchell v. Indep. Home Care, Inc._, No. 2:17-cv-717, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) (same), _report and recommendation adopted_, No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 39104 (S.D. Ohio Mar. 12, 2019) (Watson, J.); _see also Dillow v. Home Care Network, Inc._, No. 1:16-cv-612, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (Black, J.) (stating that while the parties had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

The Parties engaged in substantial investigation and litigation on multiple fronts prior to negotiating the Settlement Agreement. Defendant obtained and produced the payroll and other wage and hour data required for the Parties to construct a damages model. Class Counsel retained an MA level Economist to provide a damages calculation for the Class Members and Defendant

exchanged its own damages model, which allowed counsel for the Parties to engage in extensive back and forth calculations. In addition, the legal issues in this case were thoroughly researched and debated by the Parties (**Exhibit 2**, Coffman Decl., ¶ 21; Bryant Decl., ¶ 20).

4. *The Risks of Litigation and Uncertainty of Recovery Favor Approval.*

Counsel for both sides believe in the merits of their clients' positions but nonetheless recognize that litigation of these types of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to the claims and maintains that the Class Members are not entitled to any overtime compensation—and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

The possible recovery is also open to dispute. Even if Representative Plaintiff proves liability, the amount of recovery is uncertain and something upon which the Parties continue to disagree (**Exhibit 2**, Coffman Decl., ¶¶ 43–44; Bryant Decl., ¶¶ 41–43).

5. *Experienced Counsels' Views Favor Approval.*

The recommendation of Class Counsel, skilled in class actions, that the Court should approve the Settlement is entitled to deference. *Satterly*, 2020 WL 6536342, at *7; *see also Williams*, 720 F.2d at 922–23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (Frost, J.) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Parties' respective members of counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the

Settlement Agreement. Counsel for the Parties supports the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole (**Exhibit 2**, Coffman Decl., ¶¶ 31, 42–44; Bryant Decl., ¶ 29-33, 40-43).

6.     <u>*The Reaction of Absent Class Members Cannot Be Assessed Until after Notice Issues.*</u>

There has not yet been an opportunity to gauge the reaction of absent Class Members because class notice has not yet been issued. The Parties are of the opinion that this factor will likely favor approval because none of the Parties, their Counsel, nor any person on their behalf shall seek to solicit or otherwise encourage anyone to object to the settlement, appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the settlement claims process. Class Counsel, however, may advise Class Members on how to assert their right to object. However, this issue can be reexamined in the motion for final approval and certification.

7.     <u>*The Public Interest Favors Settlement.*</u>

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *See Satterly*, 2020 WL 6536342, at *7; *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *4 (N.D. Ohio May 16, 2016); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008). Indeed, the "[t]ouchstone for final approval is the effect on the class *as a whole* in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *11 (E.D. Mich. Dec. 20, 1996) (emphasis in original). Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the settlement class members, avoiding the continued

expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

      **E.**    **The Settlement Distributions Are Fair, Reasonable and Adequate.**

As a part of the scrutiny it applies to a wage and hour settlement, courts "must ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07-CV-3127, 2009 WL 10715595, at *9 (N.D. Ohio Aug. 10, 2009) (further citation omitted). In the present case, the Settlement provides that the total settlement amount will be distributed as follows: (a) individual payments to the Class Members who do not opt out of the Settlement; (b) the Service Award to Representative Plaintiff; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the cost of settlement administration.

As discussed below, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff and the Class Members.

        1.    *The Individual Payments Are Reasonable and Adequate.*

Class Members who were employed during the time period of January 8, 2017 to the present are to receive individual payments. Class Members who do not exclude themselves will receive individual settlement payments on a *pro rata* basis based on the number of workweeks that they worked forty (40) or more hours during the applicable lookback period of January 8, 2017 to December 26, 2021 in comparison to the total number of workweeks in which all Class Members worked forty (40) or more hours during the applicable lookback period. After deductions as outlined above, each Class Member will receive, on average, $600 for alleged unpaid overtime compensation during the applicable lookback period even though Defendant maintains that they are not entitled to any compensation. (Coffman Decl., ¶¶ 42–45; Bryant Decl., ¶¶ 24, 27).

In short, if approved by the Court, the Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation. As explained above and in the declarations of Class Counsel, the Settlement provides such individual settlement payments even though Defendant contends that the Class Members were not entitled to *any* compensation. These factors further confirm Class Counsel's opinion that the settlement is fair and reasonable, and the payments to Representative Plaintiff and the Class Members are not only adequate but consistent with substantial relief recovered in other federal jurisprudence before this Court. *See Est. of McConnell*, 2021 WL 1966062, at *6 (noting in the Order of Final Approval that an average payment of $772.56 after all deductions is an excellent result); *Satterly*, 2020 WL 6536342, at *6, *11 (wherein after deducting attorneys' fees, costs, and service awards, each of the 1,161 class members received, on average, $709.87, and this Court observed it as an "excellent recovery" and a "significant benefit to the class members").

### 2. *The service award is proper and reasonable.*

The Settlement provides for a service award of $7,500 to Representative Plaintiff. Courts routinely approve service awards in class and collective action litigation because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In this Circuit, service awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such

as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997) (Spiegel, J.). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (Weber, J.); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (Smith, J.) (noting that among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

The proposed Service Award set forth in the Agreement is within the range awarded by district courts in this Circuit. *See Satterly*, 2020 WL 6536342, at *8–9 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Brandenburg*, 2019 WL 6310376, at *7–8 (granting $10,000 service awards for each named plaintiff); *Al-Sabur v. ADS Alliance Data Sys., Inc.*, No. 2:18-cv-957, Dkt. No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an opt-in plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *7 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) (granting $10,000 service awards for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (granting $10,000 service awards for each named plaintiff); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Swigart*, 2014 WL 3447947, at *7, *8 (S.D. Ohio July 11, 2014) (Black, J.) (approving "modest class representative award" requests of $10,000 to each of the class representatives in a(n) FLSA / Rule 23 hybrid action); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 WL 2295880, at *1 (S.D. Ohio May 25, 2013) (Marbley, J.) (awarding $12,500 service award).

Representative Plaintiff was a longtime employee of Defendant whose damages extend well beyond the possible lookback period under the FLSA. Moreover, he spent significant time assisting Class Counsel in their investigation and prosecution of this case. Furthermore, Representative Plaintiff continues to work closely with Class Counsel to bring this dispute to a resolution. In addition, Representative Plaintiff attached his named to a publicly filed lawsuit against his former employer. *Satterly*, 2020 WL 6536342, at *9 (citing *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting")). As such, the time and efforts Representative Plaintiff provided supports the requested service award (Coffman Decl., ¶ 36; Bryant Decl., ¶ 35).

### 3. *The Attorneys' Fees and Expenses to Class Counsel Are Proper and Reasonable.*

After the Court has confirmed that the terms of Settlement are fair to the Class Members, it may review the Agreement as to the provision of attorneys' fees and litigation expenses to Class Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

In this case, the Settlement provides that Class Counsel receive one-third (1/3) of the total settlement amount as payment for their attorneys' fees.  A one-third (1/3) fee is a "normal fee amount in a wage and hour case." *Satterly*, 2020 WL 6536342, at *10; *see Brandenburg*, 2019 WL 6310376, at *5; *Est. of McConnell*, 2021 WL 1966062, at *5–7. In fact, in common fund cases, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases[.]" *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *4 (S.D. Ohio Sept. 20, 2019) (Morrison, J.) (quoting *Swigart*, 2014 WL 3447947, at *5).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour common fund cases, "as it best reflects FLSA's employee-protection objective." *Est. of McConnell*, 2021 WL 1966062, at *5; *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246, at *5 (S.D. Ohio Feb. 16, 2021) (Marbley, J.). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) (Marbley, J.). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* Thus, the percentage method is preferred. *See, e.g.*, *Arp. v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *6 (S.D. Ohio Nov. 5, 2020) (Rice, J.); *Dillow*, 2018 WL 4776977, at *4; *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 WL 7508650, at *3–4 (N.D. Ohio July 27, 2018); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018) (Black, J.); *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 WL 4721208, at *7–8 (S.D. Ohio Sept. 9, 2016) (Marbley, J.); *see also Osman*, 2018 WL 2095172, at *3 ("One-third of the common fund is a reasonable attorneys' fee

award 'and has been approved in similar FLSA collective actions in this judicial district.'") (further citation omitted).

Class Counsel accepted this case on a contingent fee basis and advanced all litigation expenses (Coffman Decl., ¶ 35; Bryant Decl., ¶ 34). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Inspection Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at \*7 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.) (further citation omitted); *see also Barnes v. Winking Lizard, Inc.*, No. 1:18-CV-952, 2019 WL 1614822, at \*5 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, Courts in this district acknowledge that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them. *Satterly*, 2020 WL 6536342, at \*5; *Brandenburg*, 2019 WL 6310376, at \*3; *Wright*, 2018 WL 3966253, at \*3; *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (Spiegel, J.). This case was no exception. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third (1/3) of total settlement amount appropriately compensates Class Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *Satterly*, 2020 WL 6536342, at \*5 (citing *Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2017 WL 2838148, at \*8 (S.D. Ohio June 30, 2017) (Kemp, M.J.) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.").

The Agreement also provides that Class Counsel will be reimbursed their out-of-pocket expenses. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Satterly*, 2020 WL 6536342, at *5; *Brandenburg*, 2019 WL 6310376, at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Satterly*, 2020 WL 6536342, at *11 (further citation omitted); *Brandenburg*, 2019 WL 6310376, at *7 (same).

In the prosecution of this case, Class Counsel incurred out-of-pocket expenses in the amount of $9,579.07, but this amount may increase, and the total will be set forth in the request for final approval (Ex. 1, ¶ 4; Coffman Decl., ¶ 52; Bryant Decl., ¶¶ 25, 36, 51). Because these expenses are reasonable and were incurred in the prosecution of the claims in this case, the Court should preliminarily award Class Counsel reimbursement of these costs and expenses from the settlement fund. Finally, the Court should preliminarily approve payment from the fund to Analytics Consulting, LLC in the amount of $15,621.00 for settlement administration costs[3] (Ex. 1, ¶ 4; Coffman Decl., ¶ 53; Bryant Decl., ¶ 26, 52).

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and it should therefore grant preliminary approval under Rule 23(e).

---

[3] Analytics Consulting specializes in class action settlements and legal notice campaigns. Class Counsel has worked extensively with Analytics Consulting on class and collective action notice and settlement administration, and Analytics Consulting has been approved as settlement administrator in cases across the country. *See, e.g.*, Karpik v. Huntington Bancshares Inc., No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *11 (S.D. Ohio Feb. 18, 2021) (Watson, J.) (stating that "the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, with responsibility to distribute the Notices and carry out the other administrative duties specified by the Settlement Agreement"); Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 48918, at *21 (E.D. Cal. Mar. 19, 2020) ("Analytics Consulting, LLC, is appointed as the settlement administrator"); Surdu v. Madison Glob., LLC, No. 1:15-CV-06567, 2018 U.S. Dist. LEXIS 48356, at *18 (S.D.N.Y. Mar. 23, 2018) ("I confirm Analytics Consulting, Inc. as the claims administrator.").

IV.    **CONCLUSION**

The Parties respectfully request that the Court enter the Proposed Preliminary Order

Approving Class Action Settlement Agreement attached as **Exhibit 1** and:

- Certify the following class under Rule 23: "All persons who since January 8, 2017: (1) were employed by KTH in an hourly, non-exempt role and worked at KTH's facility in St. Paris, Ohio; (2) worked 40 hours in any workweek since January 8, 2017; and (3) were included in the data provided by Defendant."

- Preliminarily approve the Settlement pursuant to Rule 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the Service Award to Representative Plaintiff;

- Designate Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

Respectfully submitted,

*s/ Matthew J.P. Coffman*                            *s/ Allen S. Kinzer*
Matthew J.P. Coffman (0085586)          Allen S. Kinzer (0040237)
**COFFMAN LEGAL, LLC**                     Janay M. Stevens (0090515)
1550 Old Henderson Rd.                        Vorys, Sater, Seymour and Pease LLP
Suite 126                                              52 East Gay Street
Columbus, OH 43220                            P.O. Box 1008
Phone: 614-949-1181                             Columbus, Ohio 43216-1008
Fax: 614-386-9964                                 Telephone: (614) 464-5428
Email: mcoffman@mcoffmanlegal.com     Facsimile: (614) 719-4957
                                                        Email: askinzer@vorys.com
*s/ Daniel I. Bryant*                               jmstevens@vorys.com
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**                      *Attorneys for Defendant*
1550 Old Henderson Rd.                        *KTH Parts Industries, Inc.*
Suite 126
Columbus, OH 43220
Phone: (614) 704-0546
Fax: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Representative Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
*Counsel for Plaintiff*
